## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PHILIP PHILLIPS and )
ENID PHILLIPS, )
                                 )
             Plaintiffs, )
                                 )
v. )      Case No. 21-CV-0390-CVE-CDL
                                 )
STATE FARM FIRE AND CASUALTY )
COMPANY, )
                                 )
             Defendant. )

### OPINION AND ORDER

Before the Court are defendant's motion for partial summary judgment (Dkt. # 24), plaintiffs' response (Dkt. # 33), and defendant's reply (Dkt. # 49). The case arises from an insurance claim dispute regarding the extent of and coverage for wind and hail damage to plaintiffs' roof. Dkt. # 2-1. On August 20, 2021, plaintiffs Philip Phillips and Enid Phillips filed an amended petition in the District Court of Rogers County, Oklahoma (Dkt. # 2-1, at 1-4) against defendant State Farm Fire and Casualty Company (State Farm) alleging breach of contract and breach of the covenant of good faith and fair dealing (bad faith). Id. at 2-4. Plaintiffs seek actual damages based on defendant's alleged breaches, and punitive damages for bad faith. Id. at 3-4. On September 15, 2021, defendant removed this case to federal court "because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000." Dkt. # 2, at 3. Defendant State Farm now moves, pursuant to Fed. R. Civ. P. 56, for partial summary judgment on plaintiffs' bad faith claim and the issue of punitive damages. Dkt. # 24. Defendant argues that State Farm conducted a prompt investigation of plaintiff's insurance claim, and there is a legitimate dispute as to plaintiffs' demand

for total roof replacement. Dkt. # 24.  Plaintiffs respond that State Farm acted in bad faith by failing to conduct a second inspection after it "ignored" the additional information and estimates it was given about the extent of the damage to plaintiffs' roof.  Dkt. # 33.

## I.

The following facts are not in dispute:  Plaintiffs claim their property was damaged by a hail storm on March 27, 2020.  Dkt. # 24, at 5; Dkt. # 33, at 5.  At the time, plaintiffs' property was insured under State Farm policy number 36-B8-A469-3.  Dkt. # 24, at 4; Dkt. # 33, at 3.  Plaintiffs' policy covered "accidental direct physical loss to the property . . . unless the loss is excluded or limited in Section I - Losses Not Insured or otherwise excluded or limited in th[e] policy."  Dkt. # 24, at 4; Dkt. # 33, at 3.

Plaintiffs reported the loss from the hailstorm and/or windstorm to State Farm on March 30, 2020, and plaintiffs' property was inspected by State Farm claim specialist Jonathan Brazile on April 4, 2020.  Dkt. # 24, at 5; Dkt. # 33, at 5.  While plaintiffs "dispute and deny State Farm's incomplete characterization of the evidence concerning Brazile's preparation for his inspection of their property" and Brazile's actual inspection of the property (Dkt. # 33, at 5), it is undisputed that Brazile "evaluated the damage to [p]laintiffs' [p]roperty and issued a [r]eplacement [c]ost [v]alue (RCV) estimate for damages in the amount of $4,439.52."  Dkt. # 24, at 5; Dkt. # 33, at 7.  Brazile's notes from his inspection state that the estimate included damage to shingles on the south-facing slopes, a missing shingle to be replaced on the left slope, and damage to the metal "turtle vents, all gutters, fascia, and two overhead garage doors."  Dkt. # 24-2, at 5.  Plaintiffs' policy included a $3,274 deductible.  Dkt. # 24, at 4; Dkt. # 33, at 3.  On April 9, 2020, "State Farm issued an actual cash

value payment of $953.29 to [p]laintiffs based on Brazile's estimate," and plaintiff's deductible. Dkt. # 24, at 6; Dkt. # 33, at 7.

On June 4, 2020, or June 5, 2020, State Farm received an estimate from NuRoof & Construction (NuRoof) "for a full roof replacement" to plaintiffs' property "that was prepared on or about May 29, 2020." Dkt. # 24, at 6; Dkt. # 33, at 8. The total estimate was $29,656, and included photographs of damage that plaintiffs claim Brazile missed during the inspection. Dkt. # 24, at 6; Dkt. # 33, at 8. The estimate also included NuRoof's notes concerning the damage. Dkt. # 24-8, at 2; Dkt. # 33, at 8. On June 5, 2020, State Farm claim specialist Gwaylon Gilbert reviewed the NuRoof documents and determined that the photos "did not depict any new or discernable covered damage" other than that which was already in Brazile's initial report and, therefore, "a second inspection was not warranted." Dkt. # 24, at 6; Dkt. # 33, at 9, 10. Also on June 5, 2020, Gilbert spoke with a representative of NuRoof and advised that representative that the "photos were reviewed and there is no new discernable damage" and that a "[second] inspection is not warranted." Dkt. # 24, at 6; Dkt. # 33, at 10; Dkt. # 24-2, at 3.

After Gilbert's initial denial of plaintiffs' request for a second inspection, NuRoof submitted more photos, including apparent damage to gutters. Dkt. # 34-3, at 4. State Farm's claim file shows that on June 12, 2020, the State Farm employee who reviewed the new information noted that the "[p]hotos of gutters are different from what's on file but not sure if gutter damages have been estimated for unable [sic] to distinguish elevations through photos." Id. Therefore, the claim was returned to Gilbert "for further review / consideration of an additional inspection," as the reviewing employee was "unable to reconcile findings of possible hail damage to dwelling in property office." Id. Gilbert then conducted a second review of plaintiffs' claim on June 16, 2020, during which

3

Gilbert noted the "new photos of gutters that may have possible hail damage" but also that the "initial inspection included gutters." Dkt # 24-2, at 2; Dkt. # 34-3, at 3. Gilbert reviewed the file with team manager Don Mustain, and "it was determined that [a second] inspection [was] not warranted as [the] new photos do not show hail damage in excess of what [State Farm] estimated for in the initial inspection" and the claim was closed. Dkt # 24-2, at 2; Dkt. # 34-3, at 3. On June 19, 2020, plaintiff Philip Phillips called Gilbert to discuss the claim, and Gilbert explained that he denied plaintiffs' request for a second inspection based on his assessment of the information from NuRoof. Dkt. # 24, at 7; Dkt. # 33, at 11.

The Court notes the following additional facts from the record: during Gilbert's first review of the information from NuRoof, he concluded that "[p]ictures of what contractor is calling hail are [b]listers and mechanical." Dkt. # 24-2, at 3; Dkt. # 34-3, at 5; Dkt. # 34-5, 8-10. Brazile did not note any blisters or mechanical damage in his evaluation, and he testified that he would have noted such damage had he seen any. Dkt. # 34-1, at 10-12. In addition, Gilbert's notation summarizing Brazile's initial evaluation misstates some of the damage that Brazile observed. Gilbert noted that Brazile observed that "[a]ll metals (pipe jacks and turtle vents) showed no hail damage with the exception for one (1 of 6) turtle vent which had a small corner hit. No hail to downspout and gutter sustain pea size hit. Shutter show now hail. Ridge is clean of hail." Dkt. # 24-2, at 3; Dkt. # 34-3, at 5. However, Brazile's notes state all six turtle vents should be repaired and replaced and the "rear ridge had discernible hail damage"; it also states that he observed "roof damages to the South/Right slope, turtle vents, all gutters, fascia, and overhead doors." Dkt. # 24-2, at 5.

Gilbert did not review any written State Farm guidelines concerning a response to an insured request for second inspection prior to reviewing the information initially provided by NuRoof. Dkt.

4

# 34-5, at 8-11.  Gilbert did not know any such guidelines existed.  Id.  Gilbert testified that he

conducted the review of the NuRoof information with an understanding that the standard for granting

a request for a second inspection is whether the information provided shows "new, discernable

damage."  Id.  "State Farm has written polices that govern insured's request for a second inspection"

and "State Farm's written policies incorporate . . . industry standards."  Dkt. # 33, at 13; Dkt. # 49,

at 3.  The State Farm guidelines[1] that cover additional inspections states:

> Additional [i]nspections may be warranted to make a claim decision when: . . . [t]he policy
> holder presents additional information related to their claim following the initial inspection.
> In the situation an additional inspection[] may need to be completed.  Based on the individual
> facts and circumstances the claim handler should consider whether an additional inspection
> is needed, or if additional information can be addressed without an inspection. . . .
> Management may be involved in the decision to conduct an additional inspection when there
> is a disagreement with our damage evaluation.

  Dkt. # 46-1, at 3.  It also states:  "[f]ollowing are guidelines for additional inspection of claims: .

. . [e]valuate the need for an additional inspection based upon the individual facts and circumstances

of the loss."  Id.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine

dispute as to any material fact and the moving party is entitled to judgment as a matter of law.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  "[A] party may file a

---

[1]     The Court notes that State Farm's claim guidelines documents were filed under seal.  Dkt.
# 46-1, Dkt. # 46-2, Dkt. # 46-3.  The Court acknowledges that State Farm's claim guidelines
handbook may be confidential, proprietary information in its entirety.  However, as to the
short excerpts of a single page of the claim guidelines referred to in this opinion and order,
there is nothing proprietary contained therein that would necessitate confidentiality or filing
this opinion and order under seal.

motion for summary judgment at any time until 30 days after the close of all discovery[,]" Fed. R. Civ. P. 56(b), including before any discovery has been conducted. "Movants for summary judgment bear the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." Silverstein v. Federal Bureau of Prisons, 559 F. App'x 739, 752 (10th Cir. 2014); see also Adler v. Wal–Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

Defendant State Farm moves for partial summary judgment on the following grounds:

*a.     Bad Faith*

Defendant argues that plaintiffs' bad faith claim fails as a matter of law. Dkt. # 24, at 9. Specifically, defendant argues that there is a "legitimate dispute over the extent and valuation of storm damage" to plaintiffs' property, and plaintiffs "cannot establish [that State Farm's conduct meets] the elements of bad faith." Id. at 9, 10. Plaintiffs argue that a reasonable jury could "conclude that State Farm breached the duty of good faith and fair dealing" in its handling of their

6

claim because it "unreasonably ignored and discounted the additional information provided by [p]laintiffs" and "refused to perform a second inspection" of plaintiffs' property.  Dkt. # 33, at 2-3.

The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought."  Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"  Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)).  To succeed on a bad faith claim, plaintiffs "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiffs'] claim."  Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019).  According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith.  Shotts, 943 F.3d at 1314-15.  The Court considers 1) "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim"; and 2) "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith."  Id. at 1315.  "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the

claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

For step one, the Court finds that there exists a legitimate dispute between plaintiffs and defendant regarding coverage and the total value of the claim. Defendant State Farm sent an adjuster to inspect plaintiffs' roof for covered storm-related damage, who created an estimated replacement cost value for repairs. Plaintiffs' roofing contractor concluded that plaintiffs' roof damage from hail and wind necessitated complete replacement. State Farm then reviewed the information provided by plaintiffs' contractor and consistently concluded that there was no wind and hail damage beyond what was covered in Brazile's estimated replacement cost value. Thus, there is a legitimate dispute as to the extent and valuation of damage to plaintiffs' roof.

For step two, the Court finds that plaintiffs have failed to offer sufficient evidence of defendant's bad faith. Plaintiffs present no facts from which a reasonable jury could find that State Farm did not actually rely on the legitimate dispute to deny the claim; denied the claim for an illegitimate reason; treated plaintiffs unfairly; or performed an inadequate investigation. The undisputed facts establish that State Farm sent an adjuster to inspect plaintiffs' roof and the claim payment was promptly issued for the damage recorded during that inspection. In addition, plaintiffs' assertion that defendant "ignored" plaintiffs' information is not supported by the evidence. On the contrary, the undisputed facts also establish that, after plaintiffs' contractor submitted additional information concerning damage to plaintiffs' roof, that information was reviewed by Gilbert, a claims specialist who determined there was no additional damage that State Farm had not already processed. Then, when plaintiffs submitted more additional information, that was reviewed by another agent. That agent could not reconcile the new information with the initial report, so Gilbert

reviewed the new information along with his supervisor before deciding there was still no reason to conduct an additional inspection.   Taken together, these facts demonstrate that State Farm investigated the damage, processed the claim, and reviewed plaintiffs' supplemental information multiple times and determined that an additional inspection was not warranted.

The Court notes that plaintiffs point to evidence that Gilbert did not consult State Farm's written guidelines about responding to such a request for an additional inspection, and indeed, was not aware such written guidelines existed.   However, the evidence also shows that Gilbert reviewed the supplemental information looking for "new, discernible information."   That standard is consistent with State Farm's written guidelines, which directs claim handlers to consider the "individual facts and circumstances" of the claim.   If the claim handler determines that the additional information does not present anything new about the claim, then concluding that an additional inspection is not warranted is consistent with State Farm's written policy.   Plaintiffs also argue that Gilbert's "misunderstanding" of what Brazile observed and reported somehow indicates bad faith; however, any such errors and their potential effect on Gilbert's conclusions and decision to not order a second inspection are legitimate questions of fact with respect to plaintiffs' breach of contract claim.   On the other hand, plaintiffs present no direct evidence of defendant's intentional bad-faith conduct.

That different State Farm claims specialists drew different or even mistaken conclusions about the damage to plaintiffs' roof is sufficient to substantiate that there is a legitimate dispute as to the extent and valuation of damage.   It does not, however, raise any evidence of intentional bad faith conduct.   Therefore, the Court grants defendant's motion for partial summary judgment as to plaintiffs' bad faith claim.

     *b.*    *Punitive Damages*

9

Under Oklahoma law, a jury may award punitive damages "[w]here the jury finds by clear and convincing evidence that . . . [a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured[.]"  OKLA. STAT. tit. 23, § 9.1(B)(2).  Thus, a punitive damages claim is "dependent upon bad faith for its basis."  Peters v. Am. Income Life Ins. Co., 77 P.3d 1090, 1099 n.9 (Okla. Civ. App. 2002).  Accordingly, plaintiffs' claim for relief based on punitive damages fails as a matter of law, and the Court grants defendant's motion for partial summary judgment as to the issue of punitive damages.

**IT IS THEREFORE ORDERED** that defendant's motion for partial summary judgment (Dkt. # 24) is **granted** as to plaintiffs' bad faith claim and the issue of punitive damages.

**DATED** this 8th day of November, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

10