## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

PHILIP PHILLIPS and          )
ENID PHILLIPS,              )
                              )
          **Plaintiffs,**        )
                              )
**v.**                            )       **Case No. 21-CV-0390-CVE-CDL**
                              )
**STATE FARM FIRE AND CASUALTY**    )
**COMPANY,**                  )
                              )
          **Defendant.**        )

## OPINION AND ORDER

Before the Court are plaintiffs' motion in limine (Dkt. # 26); defendant's response to plaintiffs' motion in limine (Dkt. # 40); plaintiffs' reply in support of their motion in limine (Dkt. # 50); defendant's motion in limine regarding punitive damages (Dkt. # 27); plaintiffs' response to defendant's motion in limine regarding punitive damages (Dkt. # 39); defendant's reply in support of its motion in limine regarding punitive damages (Dkt. # 52); defendant's omnibus motion in limine (Dkt. # 28); plaintiffs' response to defendant's omnibus motion in limine (Dkt. # 38); defendant's reply in support of its omnibus motion in limine (Dkt. # 53); defendant's motion in limine regarding alleged roof repairs to other homes (Dkt. # 29); plaintiffs' response to defendant's motion in limine regarding alleged roof repairs to other homes (Dkt. # 36); defendant's reply in support of its motion in limine regarding alleged roof repairs to other homes (Dkt. # 54); defendant's motion in limine regarding evidence of interior damage (Dkt. # 30); plaintiff's response to defendant's motion in limine regarding evidence of interior damage (Dkt. # 37); defendant's reply in support of its motion in limine regarding evidence of interior damage (Dkt. # 55); defendant's motion to exclude opinion testimony of plaintiffs' expert Stephanie Lee (Dkt. # 31); plaintiff's

response to defendant's motion to exclude opinion testimony of plaintiffs' expert Stephanie Lee (Dkt. # 41); defendant's reply in support of its motion to exclude opinion testimony of plaintiffs' expert Stephanie Lee (Dkt. # 56).

The case arises from an insurance claim dispute regarding the extent of and coverage for wind and hail damage to plaintiffs' roof.  Dkt. # 2-1.  On August 20, 2021, plaintiffs Philip Phillips and Enid Phillips filed an amended petition in the District Court of Rogers County, Oklahoma (Dkt. # 2-1, at 1-4) against defendant State Farm Fire and Casualty Company (State Farm) alleging breach of contract and breach of the covenant of good faith and fair dealing (bad faith).  Id. at 2-4.  Plaintiffs sought actual damages based on defendant's alleged breaches, and punitive damages for bad faith. Id. at 3-4.  On September 15, 2021, defendant removed this case to federal court "because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000."  Dkt. # 2, at 3.  On November 8, 2022, this Court issued an Opinion and Order, granting defendant's motion for partial summary judgment as to plaintiffs' bad faith claim and the issue of punitive damages.  Dkt. # 74.  A full statement of the facts are contained therein.  Id. at 1-5.

## II.

Both parties have filed motions in limine to limit or exclude evidence that may be offered at trial.  "The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'"  Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1210, 1208 (D. Kan. 2008).  However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential

grounds.  Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (N.D. Okla. Apr. 22, 2016).  State Farm removed this case to federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law.  Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998).  State law concerning the admissibility of evidence will be considered only if the issue involves a "substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule.  Id.  The parties are advised that all ruling on the motions in limine are preliminary.

**Stephanie Lee (Dkt. # 31)**

State Farm asks the Court to prohibit Stephanie Lee, plaintiffs' expert, from testifying that State Farm's investigation of plaintiffs' claim was incomplete and that it is contractually obligated to pay the full replacement cost for a new roof.  Dkt. # 31.  State Farm argues that Lee is not qualified to offer opinions concerning interpretation of plaintiffs' insurance policy.  Id. at 4. Plaintiffs respond that Lee is relying on her expertise, rather than scientific knowledge, and State Farm's arguments concerning the reliability of Lee's testimony are inapplicable.  Dkt. # 41, at 3-4. Plaintiffs also argue that Lee should be permitted to offer all of the opinions stated in her expert report, because State Farm's challenges to Lee's methodology are actually just disagreements with Lee's opinions that can be explored on cross-examination.  Id. at 7.

Lee is a public insurance adjuster who was retained by plaintiffs to offer expert testimony[1] concerning the extent of wind and hail damage and the availability and amount of insurance coverage pursuant to plaintiffs' insurance policy with State Farm. Lee has more than a decade of experience as a public insurance adjuster, previously working as an independent adjuster and at roofing and remodeling firms, where she also "assessed insurance losses" and taught "[c]ontinuing [e]ducation courses for [i]nsurance [a]djusters." Dkt. # 31-1, at 13. Lee reviewed State Farm's findings and other documents related to plaintiffs' insurance claim, but did not inspect the house herself. Id. at 1. Lee's expert report contains the following opinions:

- Opinion # 1: State Farm owes for the full replacement of the roof system, along with all other storm damaged items, to properly indemnify the Phillips according to the coverages they purchased in their insurance policy.

- Opinion # 2: The Phillips' property was damaged by a covered loss which State Farm admitted to and opened coverage for, [sic] however, State Farm's investigation was incomplete. State Farm refused to conduct a thorough, complete investigation, even after the Phillips' contractor, agent, and public adjuster requested one.

- Opinion # 3: State Farm improperly rejected the Phillips' proof of loss.

---

[1]    The Court notes that, prior to retaining Lee as an expert, plaintiffs contracted with Coppermark, a firm co-owned by Lee, for its claims handling services. Plaintiffs' agreement with Coppermark states that Coppermark receives 15 percent of any award or settlement that plaintiffs receive in this action. Dkt. # 31-2, at 4. In addition, it is clear that Coppermark was instrumental in commencing this action. See, Dkt. # 2-7, at 3 (showing that "Coppermark Consulting Corps LLC" paid the Oklahoma State Court filing fees). Plaintiffs then retained Lee's services as an expert through RH Consulting, another firm also co-owned by Lee. A clear conflict of interest would arise if Lee, as an expert witness, also had a financial interest in the outcome of the case via her ownership of Coppermark. However, Lee testified that once she was retained as an expert, Coppermark's compensation changed from a contingency fee based on the outcome of the case to an hourly rate for Coppermark's services. Dkt. # 31-2, at 5-7. Lee also testified that there is no document which reflects this amended agreement. Id. at 6. For the purposes of this motion only, the Court assumes Lee's testimony about the hourly rate is accurate and Lee no longer has financial interest in the outcome of this case.

Id. at 8-12.  After reviewing plaintiffs' policy, State Farm's claim file, and photographs taken by those who inspected the roof, Lee found that based on the "damages that exist" and were documented, "a full replacement of [plaintiffs'] roof is warranted and covered by [plaintiffs'] policy."  Id. at 9.  Lee also concluded that State Farm's investigation was "incomplete" because it failed to send a licensed adjuster to perform a second inspection after plaintiffs notified State Farm about damage they discovered after the first inspection.  Id.

State Farm took Lee's deposition and Lee testified that she considers herself an expert in interpreting insurance policies based on her experience "in doing so" for 13 years.  Dkt. # 31-2, at 14.  Lee also testified that she has never prepared an insurance policy or any portion of a policy, nor has she ever been an underwriter.  Id. at 13.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Fed. R. Evid. 702.  The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999).  In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts when considering a Daubert challenge to the admissibility of expert testimony.  First, the court should make a preliminary finding that the expert is qualified to testify.  Id. at 1232-33.  Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his/her conclusion and that the expert's opinion is based on a reliable factual basis.  Id. at 1233.  The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

(1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or

5

potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94).  The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions."  Id.  In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert.  Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003).  Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible.  This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'"  Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

Plaintiffs argue that the Court should not strictly apply the Daubert factors to determine whether Lee's testimony is reliable, and plaintiffs claim that Lee's experience, rather than her methodology, should be the primary focus of the Court's analysis.  Dkt. # 41.  Courts sometimes apply a more flexible approach to determine whether the testimony of an expert offering opinions based on his or her experience, rather than on a purely scientific matter, is admissible at trial, but this flexibility does not allow a court to wholly ignore the Daubert requirements for the admissibility of expert testimony.  Galbraith v. State Farm Fire & Cas. Co., 2018 WL 8343825, *3 (W.D. Okla. July 20, 2018).  The Court must perform its gatekeeper function to determine the admissibility of expert testimony, whether the expert is testifying based on "professional studies or personal experience," and the Court must ensure that any expert "employs in the courtroom the same level of intellectual

rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., 526 U.S. at 152.  The Court will consider the Daubert factors when they are applicable, but the Court will also consider any other factor identified by the parties to determine if Lee is qualified and if her opinions are based on sound methodology.

State Farm argues that Lee is not qualified to offer an expert opinions concerning "legal opinions on insurance contract interpretation."  Dkt. # 31, at 6.  Lee testified that her expertise in policy interpretation comes from reading and interpreting them for 13 years. Dkt. # 31-2, at 14.  Lee has never been employed by an insurance company, though she testifies that she has worked as an independent adjuster and has adjusted for several insurance companies including "USAA, The Hartford, Met Life, [and] ANPAC."  Dkt. # 41-2, at 7.  However, she has no experience drafting insurance policies, and State Farm argues that she has no experience that would allow her to offer an opinion that the insurance policy requires State Farm to fully replace plaintiffs' roof.  Dkt. # 31, at 6.

In this case, there are no complex issues of contract interpretation that require either party to offer expert testimony on this issue, and neither party's expert or fact witnesses should offer opinions on the ultimate issue concerning insurance coverage.  Instead, there is a factual dispute as to whether plaintiffs' property suffered wind and hail damage that requires a total roof replacement, rather than the more limited damage found by State Farm's adjuster.  The key policy language in this case is the term "accidental direct physical loss to the property," and this language is not particularly complex in light of the nature of plaintiffs' claim.  Lee will be prohibited from offering an opinion concerning interpretation of plaintiffs' insurance policy, but the same limitation is equally applicable to any expert testimony offered by State Farm.

In addition, the Court finds that Lee should be precluded from offering an expert opinion that the roof should be fully replaced, because Lee's report lacks the foundation to reach such a conclusion. After recounting the damage included in State Farm's estimate and noting that plaintiffs provided a video of the storm, Lee's report states simply, "[g]iven the damages that exist and have been documented by photos and provided to State Farm, a full replacement of this roof is warranted . . . ." Dkt. # 31-1, at 8-9. However, Lee never physically inspected plaintiffs' roof, and the report fails to provide the necessary methodological grounding for the conclusion that a full replacement of the roof is warranted. Of course Lee could not explain what damage she observed on plaintiffs' roof and what analyses she performed to determine that the damage she found to the roof was not repairable because she never physically inspected plaintiffs' roof. Even assuming such a conclusion could be drawn just from reviewing the materials that Lee referenced for her report, Lee must employ some reliable methodology, and demonstrate its use; this is necessary to avoid analytical gaps between the data and the conclusion that the damages could not be repaired and required a full replacement. Instead, Lee's conclusions, as presented in her report without this assessment and reasoning, simply parrot the lay evidence supporting the need for a new roof, while trying to label them as "expert" opinions. This will not be permitted. No reliable methodology is explained in the report, leaving an analytical chasm between the photos of damage and the conclusion that a full roof replacement is warranted. Therefore, Lee will not be permitted to offer any expert opinions about the policy interpretation nor whether the damage to plaintiffs' roof warrants a full replacement. Lee's remaining opinions in her report concern the adequacy of State Farm's investigation; as such, they were relevant only to plaintiffs' already decided bad faith claim and not the breach of contract claim, and so will also be excluded as irrelevant.

State Farm's final argument as to the admissibility of Lee's expert testimony is that she should be precluded from offering any opinion that was not disclosed in her expert report. Dkt. # 31, at 10.  Specifically, defendants argue that Lee "should not be permitted to offer any opinions regarding the estimate of the cost of repairs to the [p]laintiffs' property as she failed to disclose such opinions and the basis thereof in her written report." Id. at 13.  Plaintiffs assert that Lee may present testimony about the "Coppermark claim packet and the GPS [Loss Consulting] estimate in her capacity as a fact witness." Dkt. # 41, at 7.  Lee's expert report does not form an opinion as to the cost of the repairs for which she believes State Farm is responsible, and plaintiffs present no reason why she should be permitted to offer any expert opinions regarding such an estimate; therefore, the Court finds that Lee should be prohibited from offering any expert opinions concerning the GPS estimate that was included in the claim packet, or the cost of repairs generally.

While Lee may not testify as an expert, she may provide testimony that would be relevant and helpful to the jury because of her personal knowledge related to the at-issue insurance claim only.  Under Rule 701, Lee may testify--as a lay witness--to her personal knowledge and opinions that were rationally formed based on her perception.  Lee's perceptions will inevitably be influenced by her particularized knowledge in insurance adjusting.  Accordingly, Lee may testify as a fact witness.

For example, Lee may testify to her personal knowledge and perceptions with respect to representing plaintiffs during the claims process.  However, Lee may not testify to issues or facts of which she has no personal knowledge.  In other words, Lee could testify (if she has first-hand knowledge) that, after reviewing plaintiffs' policy and the claim materials, she advised plaintiffs that, based on her experience as an insurance adjuster, she believed that plaintiffs' damage should be

covered under the at-issue policy.  Of course, defendant may cross-examine Lee about that handling, including the credibility of her damage assessment without having inspected plaintiffs' property. In this example, Lee would be testifying to relevant facts that provide background context regarding how the dispute between plaintiffs and defendant developed.  By contrast, Lee may not testify definitively that, based on the language and construction of the subject policy, plaintiffs' damage is covered.

The Court notes that, while Lee's personal knowledge appears to be limited, the record shows that she was involved in the claims handling process over the course of Coppermark's representation. Dkt. # 41-3, at 2.  That Lee does not have personal knowledge of very many things relevant to this case goes to the weight, not admissibility, of her lay witness testimony--it is for the jury to evaluate the significance of Lee's testimony.  See United States v. Foust, 989 F.3d 842, 847 (10th Cir. 2021). Therefore, to the extent that Lee's testimony is 1) relevant; 2) helpful to the jury; 3) based on her own perceptions, which may be influenced by her particularized knowledge; and 4) not otherwise excluded under the Federal Rules of Evidence, it is admissible.

Finally, because Lee's testimony may be admissible pursuant to Rule 701-- which is limited to non-expert testimony of lay witnesses based on their perceptions--the Court finds that referring to Lee as an "expert," when in fact she is a non-expert fact witness, creates a substantial risk of unduly influencing, confusing, or misleading the jury, which is prohibited under Rule 403.  See Fed. R. Evid. 403.

**State Farm's Omnibus Motion in Limine (Dkt. # 28)**

State Farm has filed an omnibus motion in limine identifying eight categories of evidence that it seeks to exclude or limit at trial: 1) "any evidence of damages allegedly suffered by [p]laintiffs

that have not previously been disclosed"; 2) "evidence regarding, or otherwise referencing, [p]laintiffs' attorneys' fees"; 3) "evidence regarding, or otherwise referencing, other lawsuits involving State Farm"; 4) "testimony regarding or referencing any of State Farm's advertising, mottos, or slogans"; 5) "mention[] [of] the Unfair Claims Settlement Practices Act"; 6) argument as to State Farm having a fiduciary duty; 7) "any settlement discussions or proposals in this case, or . . . an offer of judgment made by any party"; 8) any "referenc[e] [of] bad faith or . . . any argument or evidence that State Farm acted in bad faith." Dkt. # 28, at 3-14.

1.      Evidence of Plaintiffs' Damages That Have Not Been Disclosed Previously

Defendant argues that, pursuant to Rule 26 disclosure requirements, plaintiffs should be precluded from alleging any breach of contract damages exceeding the amount provided by plaintiffs during discovery. Dkt. # 28, at 4. Defendant further argues that plaintiffs should also be "precluded from alleging or presenting evidence that they incurred a specific amount or range of damages for [d]efendant's alleged bad faith." Id. at 4-5.

As a preliminary matter, in the Opinion and Order dated November 8, 2022, the Court granted defendant's motion for partial summary judgment as to the issue of plaintiffs' bad faith claim and the issue of punitive damages. Dkt. # 74. Therefore, defendant's motion in limine as to alleging or presenting evidence regarding bad faith or punitive damages should be granted in accordance with that opinion.

To the extent plaintiffs may intend to seek damages for emotional distress arising under the breach of contract claim, such damages are not recoverable in this contract claim where plaintiffs show no physical injury. See Seidenbach's, Inc. v. Williams, 361 P.2d 185, 187 (Okla. 1961) ("[D]amages may not be recovered for mental anguish, humiliation, and embarrassment allegedly

11

resulting from a breach of contract, where same 'was not produced by, or the result of, some physical injury and suffering."); Coble v. Bowers, 809 P.2d 69, 73 (Okla. Civ. App. 1990) ("Emotional distress as a consequence of an intentional tort is distinguishable from distress resulting from breach of contract or negligence, which requires a showing of physical injury."); see also Woodmen Accident & Life Ins. Co. v. Bryant, 784 F.2d 1052, 1055 (10th Cir. 1986) (stating, in a case from New Mexico, that such damages are "not recoverable under a contract claim, unless the breach causes bodily harm, or unless the contract or the breach is of such a kind that serious emotional disturbance is a particularly likely result") (citing Restatement (Second) of Contracts § 353 (1981)). Here, plaintiffs' claim for breach of contract claim does not concern any bodily harm, nor was it of such a kind that serious emotional disturbance was a likely result.  Therefore, plaintiffs will not be able to seek damages for emotional distress for the remaining breach of contract claim; thus, defendant's motion in limine as to alleging or presenting evidence that they incurred a specific amount or range of such non-economic damages should be granted.

As to contractual damages, plaintiffs provided notice to defendant in their Rule 26 disclosures that they are seeking contractual damages of at least $46,058.58 for the replacement cost value of the roof based on the estimate prepared by GPS Loss Consulting.  Dkt. # 28, at 4. Notwithstanding, the GPS Loss Consulting report provides an estimate of the net cost of replacing plaintiffs' roof as of March 2021.  The estimate does not, for example, reflect the replacement cost value of plaintiffs' roof in 2023, which would account for inflation and other circumstances that may influence the actual cost of replacing plaintiffs' roof.  However, the report provides defendant with adequate notice--for purposes of Rule 26 disclosures--of the approximate amount of actual damages plaintiffs seek for their breach of contract claim.  Therefore, the Court finds that defendant's motion

in limine should be denied as to plaintiffs alleging contract damages that exceed the amount disclosed in their Rule 26 disclosures.

2.        Evidence Regarding Plaintiffs' Attorneys' Fees

Issue two is uncontested and State Farm's motion is granted as to this issue.

3.        Evidence of Other Lawsuits Involving State Farm

State Farm asks the Court to exclude evidence of other lawsuits against State Farm, because this evidence is irrelevant and unfairly prejudicial to State Farm. Dkt. # 28, at 6. Plaintiffs respond that they intend to ask State Farm's expert witness and corporate representative if they have previously testified in other cases, and this could lead the jury to infer that other cases have been filed against State Farm. Dkt. # 38, at 7. Both parties may question expert witnesses about testimony in prior cases to the extent it is relevant to the expert's experience or possible bias, but neither party nor their expert witnesses may discuss the outcome of previous cases. As to plaintiffs' additional arguments that evidence of State Farm's pattern of claims handling is relevant to demonstrate defendant's improper motivations for denying a second inspection and for the issue of punitive damages, such evidence would speak to plaintiffs' since-extinguished claims and will not be permitted. Plaintiffs are advised that they may not generally refer to the fact that other lawsuits have been filed against State Farm, because this would be unfairly prejudicial and tend to encourage a verdict in their favor based merely on the fact that State Farm has been named as a defendant in other lawsuits. However, State Farm's request to wholly exclude references to other lawsuits is denied, but plaintiffs must abide by the limitation that this evidence may be used only as it relates to the experience or possible bias of State Farm's expert witnesses.

4.        Any Reference to State Farm's Advertising, Mottos, or Slogans

Issue four is uncontested and State Farm's motion is granted as to this issue.

5.      Mention of the Unfair Claims Settlement Practices Act

Defendant argues that Oklahoma law "recognizes that it is *improper* for a jury to consider the [Unfair Claims Settlement Practices Act (UCSPA)]."  Dkt. # 28, at 10 (emphasis in original). Plaintiffs respond that defendant's motion should be denied because the UCSPA establishes industry standards and "[e]vidence that [d]efendant failed to comply with [those standards] is relevant [to the bad faith claim."  Dkt. # 38, at 12.  The Court finds that, because plaintiffs' bad faith claim is no longer at issue, defendant's motion should be granted.

6.      Arguments that State Farm Has a Fiduciary Duty

Defendant argues that plaintiffs "have asserted a claim for a violation of the duty of good faith and fair dealing, *not* a breach of fiduciary duty" and, therefore, "[p]laintiffs should be precluded from alleging State Farm had a fiduciary duty."  Dkt. # 28, at 12, 13 (emphasis in original).  The Court agrees.  While plaintiffs' argue that the defendant's implied duty of good faith and fair dealing is relevant, and even subsumed in, their bad faith claim, see Dkt. # 38, at 13-14, the Court granted summary judgment on plaintiffs' bad faith claim.  Moreover, breach of a fiduciary duty is a claim that is distinct from breach of the duty of good faith and fair dealing.  See Cosper v. Farmers Ins. Co., 309 P.3d 147, 150 (Okla. Civ. App. 2013) ("the existence of the duty of good faith and fair dealing implied in insurance contracts does not necessarily mean [p]laintiffs' petition states a claim for breach of fiduciary duty").  Therefore, any reference to State Farm having a fiduciary duty is 1) not relevant to plaintiffs' breach of contract claim; and 2) would impermissibly prejudice State Farm by creating a risk of confusing the issues or misleading the jury.  Accordingly, the Court finds that

14

defendant's motion in limine as to any reference to State Farm having a fiduciary duty should be granted.

7.      Reference to Settlement Discussions, Proposals, or Any Offer of Judgment

Plaintiffs' response fails to address issue seven and State Farm understands it to be unopposed.  In any event, under Fed. R. Civ. P. 68, "evidence of an unaccepted offer is not admissible except in a proceeding to determine costs."  Further, under Fed. R. Evid. 408, reference to settlement discussions and negotiations is not admissible "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction"; however, the Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, [or] negating a contention of undue delay."  The Court fails to see how any settlement discussions, proposals, or offers of judgment are relevant to plaintiffs' breach of contract claim, and plaintiffs present no authority or analogous cases where a court found that settlement discussions, proposals, or offers of judgment were relevant to an insurance breach of contract claim.  Therefore, the Court finds that defendant's motion in limine as to any reference to settlement discussions, proposals, or offers of judgment should be granted.

8.      Any Reference to Bad Faith or That State Farm Acted in Bad Faith

Defendant requests that, if the Court granted defendant's motion for partial summary judgment on plaintiffs' bad faith claim, "any reference to a covenant of good faith and fair dealing, or an alleged breach of the covenant, or to any alleged act of bad faith by State Farm" be precluded. Dkt. # 28, at 14.  In the Opinion and Order dated November 8, 2022, this Court granted defendant's motion for partial summary judgment on plaintiffs' bad faith claim.  Dkt. # 74.  Accordingly, the Court finds that any statements or argument as to bad faith, the covenant of good faith and fair

15

dealing, and so forth is relevant to a bad faith claim only.  In other words, any alleged acts of bad faith or reference to the implied covenant of good faith and fair dealing are <u>not</u> relevant to plaintiffs' breach of contract claim--such topics are not relevant to the extent of covered roof damage and the amount owed under the terms of the policy.  Thus, the Court finds that defendant's motion in limine as to any reference to bad faith, the covenant of good faith and fair dealing, and any breach of the covenant of good faith and fair dealing should be granted.

## Punitive Damages (Dkt. # 27)

In the event that plaintiffs' bad faith claim survived a motion for summary judgment, State Farm requested that the Court preclude the jury from considering the issue of punitive damages and related evidence until the jury has determined whether State Farm is liable for breaching the insurance contract.  Dkt. # 29.  The Court granted State Farm's motion for summary judgment on plaintiffs' bad faith claim and plaintiff cannot recover punitive damages on their breach of contract claim.  Therefore, State Farm's motion in limine to preclude discussion or evidence relating to punitive damages is granted.

## Roof Repairs to Other Homes (Dkt. # 29)

State Farm argues that plaintiffs may attempt to testify that other homes in their neighborhood had roof repairs or replacements after the March 2020 hail storm, and State Farm seeks to exclude the evidence on grounds that it is not relevant to plaintiffs' breach of contract claim and this evidence would be unfairly prejudicial State Farm.  Dkt. # 29.  Plaintiffs respond that evidence of repairs to other homes tends to rebut State Farm's findings that there was little or no hail damage to the roof of their home, and their personal observations on this issue are relevant.  Dkt. # 36.  The Court agrees with State Farm that evidence of repairs to other homes is irrelevant and will

unnecessarily delay the trial.  In order for this evidence to be relevant, plaintiffs would be required to identify specific homes that had a full roof replacement after the storm, the nature and extent of the damage to that home, and whether the roof was paid for by the homeowner or insurance proceeds.  It does not appear that plaintiffs intend to offer such evidence, and they merely intend to make personal observations that other homes received a new roof after the hail storm.  The focus of this case is whether plaintiffs' home was damaged in a March 2020 hail storm, and plaintiffs' personal observations about repairs to other homes are not relevant.  State Farm's request to exclude plaintiffs' testimony concerning repairs to other homes is granted.

**Interior Damage (Dkt. # 30)**

State Farm argues that evidence of interior water damage is irrelevant to plaintiffs' breach of contract claim, because this damage was not reported to State Farm when the claim was adjusted and none of the repair estimates that form the basis of plaintiffs claim for damages includes interior repairs.  Dkt. # 30.  Plaintiffs respond that State Farm's reaction after being notified of the leak is evidence of its breach of contract, and that State Farm improperly asserts that plaintiffs should have filed a new claim related to interior water damage.  The claims file shows that State Farm's adjuster, Brazile, inspected plaintiffs' home on April 4, 2020 and found some hail damage to the roof, Dkt. # 24-2, at 5, and he prepared an estimate for repairs but not full replacement.  Dkt. # 24-6.  State Farm issued payment to plaintiffs on April 9, 2020.  Dkt. # 24, at 6; Dkt. # 33, at 7.  In early June, 2020, plaintiffs requested a second inspection after notifying State Farm about the interior water damage and obtaining an estimate for a full roof replacement from their contractor.  Dkt. # 37-1, at 1; Dkt. # 34, at 6; Dkt. # 33, at 8.  The Court finds that it would be premature to decide whether evidence of interior water damage is wholly irrelevant based on the limited record provided by the

parties, because the evidence does not rule out that the interior water damage was caused in part by State Farm's failure to fully replace the roof of plaintiffs' home; thus, it may be relevant to the issue of whether State Farm breached its contract in its handling of plaintiffs' claim.  State Farm's denials of plaintiffs' requests for a second inspection form the basis of plaintiffs' breach of contract claim; therefore, defendant's response to being informed of the interior damage may be relevant to that issue.  However, plaintiffs are advised that they will bear the burden to prove that the interior water damage arose out of damage caused by the March 2020 hail storm, and State Farm is free to argue that plaintiffs are obligated to file a new insurance claim to recover under the policy for the interior water damage first observed by plaintiffs in May 2020.

**Plaintiffs' Motion in Limine (Dkt. # 26)**

Plaintiffs have filed a motion in limine identifying eight categories of evidence that they seek to exclude or limit at trial: 1) "ruling on pretrial motions"; 2) "effect of claim, suit or judgment on insurance rates"; 3) "offers of settlement"; 4) "new opinions of the defendant's expert witness"; 5) the "mend the hold" doctrine as it relates to prohibiting State Farm from asserting new reasons for denying plaintiffs' claim"; 6) prohibiting State Farm from using "information, materials and documents which it did not possess" when it handled plaintiffs' claim; 7) any reference to any "alleged 'failure to cooperate' by any of the plaintiffs, plaintiffs' public adjuster, or by plaintiffs' counsel"; and 8) that the case was initially filed pro se or any discussion "regarding the plaintiffs' retention of counsel."  Dkt. # 26, at 2-11.

1.      Any Rulings on Pretrial Motions

Plaintiffs ask the Court to instruct defendant's counsel and its witnesses and representatives "to refrain from mentioning or divulging, directly or indirectly, and from testifying concerning the

fact that this motion, or any other pretrial motion, has been filed or any ruling by the Court in response thereto." Id. at 2-3.  Defendant "has no objection" to plaintiffs' motion on this issue, so long as the prohibition equally applies to plaintiffs.  Dkt. # 40, at 1.  The Court agrees with the parties that such references are unlikely to have any probative value and may pose a substantial risk of unfair prejudice to the opposing parties.  Therefore, the Court finds that plaintiffs' motion in limine as to any reference concerning pretrial motions and any of the Court's rulings on such motions should be granted.

> 2.      Effect of Claim, Suit, or Judgment on Insurance Rates

Plaintiffs ask the Court to preclude evidence that this litigation will tend to increase insurance premiums or rates if State Farm is required to pay additional amounts on their insurance claim.  Dkt. # 26, at 3.  State Farm responds that it has an obligation to avoid overpaying on claims and that obligation and the policy reasons for it are part of its defense to plaintiff's claims.  Dkt. # 40, at 1-3. It is not clear that State Farm intends to argue that paying the amount requested by plaintiffs will generally increase insurance rates for all of its customers, but it is common knowledge that insurers increase premiums when they are required to pay more to resolve claims made by their customers. State Farm should refrain from making specific arguments that paying plaintiffs' claim will generally increase insurance premiums, but incidental remarks by witnesses about the effect of paying claims may be permitted depending on the nature of the witness's testimony.

> 3.      Offers of Settlement

Issue three is uncontested and plaintiffs' motion is granted as to this issue for the aforementioned reasons in the Court's analysis of defendant's motion in limine, supra.

> 4.      New Opinions of Defendant's Expert Witness

Plaintiffs argue that State Farm's expert witnesses should be prohibited from offering new opinions at trial that were not previously disclosed in their expert reports or deposition testimony, Dkt. # 26, at 3-4, and State Farm agrees to abide by this requirement as long as it equally applies to plaintiffs' expert witnesses.  Dkt. # 40, at 3.  The Court finds that plaintiffs' request to exclude new expert opinions is granted, and the parties are advised that both parties are prohibited from offering previously undisclosed expert opinions at trial.

      5 & 6.  "Mend the Hold" Doctrine as it Relates to State Farm Asserting New Reasons for its Handling of Plaintiffs' Claim and State Farm's Use of Information Which It Did Not Possess When It Handled Plaintiffs' Claim

Plaintiffs assert that the "mend the hold" doctrine prohibits State Farm from offering new reasons to deny their insurance claim that differ from the reasons stated in State Farm's original denial of their claim.  Dkt. # 26, at 4-7.  Plaintiffs make a related argument that State Farm should not be permitted to use any documents or evidence that it did not possess when it denied their insurance claim.  Id. at 8-9.  State Farm responds that plaintiffs have not identified any inconsistent positions taken by State Farm in regard to their insurance claim, and plaintiffs have made no attempt to show that Oklahoma courts have adopted the "mend the hold" doctrine.  Based on the pleadings, the Court finds no reason to believe that State Farm has deviated from its original reason for limiting payment on plaintiffs' insurance claim, and it does not appear that plaintiffs' argument is relevant in this case.  Plaintiffs are advised that State Farm may fully respond to new bases for coverage raised by plaintiffs that were not contemplated by State Farm when it originally denied plaintiffs' insurance claim.  This includes the use of discovery materials and evidence gathered by State Farm in defending against plaintiffs' claims in this case, and plaintiffs' request to apply the "mend the

hold" doctrine or preclude the use of any materials not in State Farm's possession when it denied

plaintiffs' insurance claim is denied.

7.      Any Reference to Any Alleged 'Failure to Cooperate' by Any of the Plaintiffs,

        Plaintiffs' Public Adjuster, or by Plaintiffs' Counsel

Plaintiffs move the Court to prohibit State Farm from "presenting any testimony, documents,

evidence, arguemnts, or reference to any kind to any alleged 'failure to cooperate'" by plaintiffs or

their representatives "during the course of [State Farm's] purported investigation and/or handling

of" plaintiffs' insurance claim.  Dkt. # 26, at 10.  Plaintiffs also state that they are "not aware of any

evidence that would fall into this category" and that there is "no evidence (and nothing in the claim

file) that would indicate that any of the [p]laintiffs failed to cooperate with [d]efendant any any point

in time in the handling of the claim."  Id.  In response, defendant argues that, under the policy,

plaintiffs were required to cooperate with State Farm's investigation; thus "any evidence regarding

their failing to perform their contractual duty" would not be "irrelevant or prejudicial."  The Court

finds that State Farm is not likely to offer any evidence falling within this category, and plaintiff's

motion is granted as to this issue.  However, the parties are reminded that all rulings are preliminary

and may be revisited at trial should defendants move to present evidence, as part of its breach of

contract defense, that plaintiffs did not cooperate with its claim investigation.

8.      That the Case was Initially Filed Pro Se or Any Discussion Regarding the Plaintiffs'

        Retention of Counsel

Plaintiffs move the Court to prohibit State Farm from any reference to the origin of this case,

including that the case was initially filed pro se and plaintiffs' subsequent retention of counsel.  Dkt.

# 26, at 10-11.  Defendant argues that Coppermark drafted plaintiffs' initial petition, and that is

relevant to the "reliability of Coppermark's inflated estimate and [] Lee's purported expert opinions. Dkt. # 40, at 14.

While there may be a factual dispute as to the origin of plaintiffs' petition and Coppermark's level of participation in its creation,[2] that factual question is not relevant to the issues in breach of contract claim that the jury will decide.  Therefore, State Farm is prohibited from discussing the facts surrounding the filing of the petition, including its drafting, plaintiffs' initial pro se status, and subsequent retention of counsel.  However, to the extent that defendant believes Coppermark, and Lee, specifically, have a financial interest in the outcome of the case, that may be relevant to the credibility of the witness or evidence, and State Farm is permitted to raise those issues on cross-examination.

**IT IS THEREFORE ORDERED** that defendant's motion to exclude the testimony of plaintiffs' expert, Stephanie Lee (Dkt. # 31) is **granted**; however, Lee may provide testimony as a fact witness under Rule 701 as limited herein.

**IT IS FURTHER ORDERED** that defendant's omnibus motion in limine (Dkt. # 28) is **granted in part**, **denied in part**, and **moot in part** as stated herein.

**IT IS FURTHER ORDERED** that defendant's motions in limine regarding alleged roof repairs to other homes (Dkt. # 29) and punitive damages (Dkt. # 27) are **granted**.

---

[2]     The Court notes that defendant's response argues that Coppermark, and Stephanie Lee specifically, drafted plaintiffs' petition on their behalf even though none of Coppermark's employees, including Lee, is a licensed attorney.  Whether plaintiffs or any of their representatives engaged in the unauthorized practice of law may be a legitimate question; however, it is not relevant and would, instead, distract the jury from deciding the factual issues in the breach of contract claim.

**IT IS FURTHER ORDERED** that defendant's motion in limine regarding evidence of interior damage (Dkt. # 30) is **denied**.

**IT IS FURTHER ORDERED** that plaintiffs' motion in limine (Dkt. # 26) is **granted in part**, **denied in part**, and **moot in part** as stated herein.

**DATED** this 2nd day of February, 2023.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

23